# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

DAWN Y. KIELLY,

         Plaintiff,

vs.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.

No. 16-CV-0030-CJW

**MEMORANDUM OPINION AND ORDER**

_____

      The plaintiff, Dawn Y. Kielly (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 405(g), 423, 1383(c)(3). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

      In addition to the record, the Court also relies on the parties' Joint Statement of Facts (Doc. 11). Claimant was born in 1966. AR 48. She was enrolled in Kirkwood Community College where she studied computer sciences, but never completed her schooling, nor obtained a degree. AR 48-49. Claimant has past work as a taxicab dispatcher at Yellow Cab and taking incoming calls for Medicare and Medicaid and other work. AR 13, 26, 50-51, 417. Claimant's applications for DIB (filed October 30, 2012) and SSI (filed November 19, 2012) had a protective filing date of October 25, 2012. AR 10, 309-324, 502, and Doc. 11, at 2. Claimant alleged a disability onset date of October

17, 2011.  AR 10, 62.  She contends she is disabled due to the following impairments: osteoarthritis of the knees, left shoulder, and spine; obesity; a history of a lumbar fusion with degenerative disc disease of the lumbar and the cervical spine; a partial thickness tear of the Achilles tendon; a major depressive disorder; and a generalized anxiety disorder/post-traumatic stress disorder; asthma/allergies; excised masses; fatty liver; obstructive sleep apnea with restless leg syndrome; fibromyalgia.  AR 14.[1]  The Commissioner denied her claims on May 1, 2013, and denied review on October 4, 2013. AR 10, 172-80, 185-197.  She then requested a hearing before an Administrative Law Judge (ALJ) on October 17, 2013.  AR 10, 198-99.

The ALJ, Tela L. Gatewood, conducted a video hearing on December 29, 2014, at which claimant, her attorney, and vocational expert, Vanessa May, testified.  AR 43. On August 6, 2015, the ALJ issued a decision denying claimant's claims.  AR 7-35. Claimant sought review from the Appeals Council, which denied her request on December 23, 2015.  AR 1.  The ALJ's decision thus became the final decision of the Commissioner.  AR 1.

Claimant filed a complaint (Doc. 3[2]) with this Court on February 19, 2016, seeking review of the ALJ's decision.  On April 15, 2016, with the consent of the

---

[1] At the hearing, claimant's counsel also alleged that claimant had chronic pain, epileptic seizures with memory loss, and spondylolisthesis.  AR 46.

[2] Claimant asserted three arguments in her complaint that were wholly absent from her brief. *See* Docs. 3 and 12.  These arguments included: the ALJ did not properly assess claimant's fibromyalgia, the ALJ posed an inaccurate hypothetical question to the vocational expert, and that the ALJ improperly substituted her own opinion for the medical opinion of the "examining source," (claimant failed to specify which examining source is meant; the prior page referenced the opinion of the examining psychological consultant, Dr. Barbara Lips).  Doc. 3, at 3.  Overall, the complaint made no reference to any citations or authority for these three arguments.  As claimant failed to brief these arguments, the Court considers them waived and will not address

parties (Doc. 7), the Honorable Linda R. Reade transferred this case to a United States magistrate judge for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in

---

them. *See* LR7a ("The term 'motion,' as used in the Local Rules, includes the following: . . . 2. All other applications or requests for court action); *see also* LR7d ("For every motion, the moving party must prepare a brief containing a statement of grounds for the motion and citations to the authorities upon which the moving party relies . . . .").

substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of

his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, evaluating claimant's work attempts after her alleged onset date, the ALJ found that claimant had not engaged in substantial gainful activity since October 17, 2011 (the alleged onset date).  AR 13-14.

At Step Two, ALJ found that claimant had severe impairments of osteoarthritis in her knees, left shoulder, and spine; obesity; a history of a lumbar fusion with degenerative disc of the lumbar and cervical spine; a partial thickness tear of the Achilles tendon; a major depressive disorder; and a generalized anxiety disorder/post-traumatic stress disorder.  AR 14.  The ALJ found the following impairments were non-severe: asthma/allergies; excised masses; fatty liver; and obstructive sleep apnea with restless leg syndrome.  AR 14.

At Step Three, the ALJ found that none of the claimant's impairment(s) equaled a presumptively disabling impairment listed in the relevant regulations.  AR 14.

At Step Four, ALJ assessed claimant's residual functional capacity to be as follows:

> [Claimant can] perform a range of light and sedentary work as defined in 20 C.F.R. § 404.1567(a) and (b) and § 416.967(a) and (b).  The claimant can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently.  She can stand and/or walk for a total of two hours in a workday.  She can sit, with normal breaks, for a total of six hours in a workday.  The claimant can balance, crouch, and climb ramps or stairs occasionally.  She cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds.  She cannot work at unprotected heights or around hazards.  The claimant cannot work in environments with concentrated exposure to temperature extremes or high humidity.  The claimant can perform simple and some limited complex work in a routine work environment.  She can work with co-workers and supervisors minimally.  She cannot work with the public.

AR 18.  Also, the ALJ determined that claimant cannot perform past work.  AR 26.

Finally, at Step Five, the ALJ found that an individual with claimant's age, education, and RFC could perform the following jobs—document preparer, ticket counter, and sorter—that exist in significant numbers in the national economy. AR 28.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

7

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Ultimately, the Court finds the ALJ did not legally err and her decision was supported by substantial evidence on the record as a whole. The Court now turns to address claimant's specific objections about the ALJ's decision. Claimant asserts that the ALJ's decision is flawed for the following three reasons: (1) the ALJ improperly assessed claimant's RFC; (2) the ALJ improperly discredited claimant's subjective complaints; and (3) the ALJ failed to properly consider claimant's obesity. Doc. 12. Claimant seeks

the reversal of the ALJ's decision and that the matter be remanded back to the ALJ so that the ALJ can further develop the record and consider the claims anew. Doc. 12, at 11.

### A. The ALJ's residual functioning capacity assessment was proper and supported by substantial evidence on the record

Claimant alleges that the ALJ improperly assessed her RFC. Specifically, claimant alleges that the record was not fully developed as there were "no treating source statements" or "physical consultative evaluations." Doc. 12, at 3-4. Thus, this case is similar to *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), which the claimant summarizes as standing for the proposition that "it was improper for the ALJ to rely on the opinions of reviewing physicians alone." *Id.* at 3. Also, claimant argues, to the best understanding of the Court, that the ALJ's reliance on the state agency medical consultants was improper given the time lapse between their review and the date of the ALJ's decision. *Id.* at 4.

On the other hand, the Commissioner argues that the ALJ fully developed the record. Doc. 13, at 5. And that *Nevland* is distinguishable from the present matter as the ALJ considered "treatment notes from numerous medical sources, as well as plaintiff's activities and reported abilities." Doc. 13, at 4-6. Overall, the Commissioner maintains that substantial evidence on the record supports the ALJ's RFC assessment.

The Court finds substantial evidence supports the RFC assessment by the ALJ. It is well-established that the ALJ has a duty to fully develop the record. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). Also, the Eighth Circuit Court of Appeals has stated that "[t]he ALJ's duty to develop the record extends even to cases

. . . where an attorney represented the claimant at the administrative hearing . . . . The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Id.* (internal citations omitted). The Court finds that the record was fully developed here. Relevant medical and other evidence on the record support all portions of the ALJ's RFC assessment. The ALJ found that claimant was able to do a range of light and sedentary work; could lift, pull, carry, and/or push twenty pounds occasionally and ten pounds frequently; could stand and/or walk for two hours in a workday; could sit for six hours in a workday with normal breaks; could crouch, crawl, climb stairs/ramps occasionally; can never climb ropes, scaffolds, or ladders; can never work in high humidity, extreme temperatures, near hazards, or at unprotected heights; claimant can perform simple tasks and some limited complex work in a routine work environment; can minimally work with supervisors and co-workers; and can never work with the public. AR 18. Again, the RFC is a medical question of what the claimant is still able to do given her mental and/or physical limitations. *Lewis*, 353 F.3d at 646 (8th Cir. 2003). The claimant has the burden to "provid[e] the evidence the Commissioner will use to determine the RFC." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). All relevant medical and other evidence is used to determine the RFC. *Id.*

In regard to claimant's physical impairments, the evidence from medical sources supports the RFC assessment. *See* AR 712-16 (clinic notes signed by Laurence S. Krain, M.D., stated: "Lab workup: lab results were "basically negative . . . Unremarkable head CT from 11/06/2011. MRI from 11/07/2011 also normal, a single nonspecific tiny focus . . . On examination she is neurologically intact."); AR 959-60 (clinic note from September 2014 stated that claimant's "EEG here was normal and so was her brain MRI epilepsy protocol"); AR 777 & 786 (University of Iowa Hospitals and Clinic treatment notes indicate that claimant had no spinal tenderness and a full range of motion in her

spine without pain in February and March of 2012); AR 852 (March 2013 clinic note from University of Iowa Hospitals and Clinics stated that claimant's X-ray showed no arthritis and normal ankle joint space); AR 139-40 (Matthew Byrnes, D.O., non-examining state consultant, noted that "Ankles: 8/8/13 PCC 8/26/13 OS visits for bilateral ankle pain stirrup brace was worthless, exam noted normal gait & motor (decreased dorsal foot sensory-previously normal per neurology), and X-rays noted 'minimal' spurring."); AR 866-67 (clinic note from April 2013 stated claimant's orientation, speech, and language was normal and her strength in her upper and lower extremities (left and right) was 5/5 for proximal and 5/5 for distal, and); AR 1003 (treatment note from October 2014 stated claimant's gait and stance was normal and no involuntary movements were witnessed); AR 988 (McFarland clinic note from September 2014 stated that claimant's knees were normally aligned and her knees had mild tricompartmental osteoarthritis). Claimant's testimony supports her RFC as well. *See* AR 55 (claimant testified to reading and watching TV); AR 431 (claimant prepares frozen or microwave meals for herself once or twice a day); AR 432 (claimant is able to handle a savings account, use money orders/checkbook, count change, and can pay her bills).

In regard to claimant's mental impairments, Dr. Lips opined that claimant was unlikely to "interact successful with supervisors, coworkers, and the public." AR 902. Such limitations were embodied in the RFC (minimal interactions with supervisors and co-workers and no interaction with the public). Dr. Lips also stated that claimant would likely be "over-stressed if required to be responsible for making independent decisions in the workplace." *Id*. Again, such limitations were embodied in the RFC (simple tasks with limited complex work). Similarly, state agency's reviewing psychologist, Jennifer Wigton, opined that claimant may "struggle with concentration and pace according to the variability of her mood, but is capable of performing simple, repetitive tasks in a routine

environment, with minimal interactions with others, when motivated to do so." AR 142. Other evidence on the record also supported the mental RFC assessment. *See* AR 1003 (October 2014 treatment note signed by a registered nurse practitioner stated that claimant could "concentrate fully when wanted with no difficulty," had intact judgment, was not easily distracted, intact remote and recent memory, normal speech, orientated to time and place, depressed mood); *see also* AR 931 (therapy note from December of 2013 that claimant stated her depression was better managed with medication). Overall, substantial evidence on the record supports the ALJ's assessment of claimant's RFC.

The Court finds the present case distinguishable from *Nevland*. The Commissioner contends that "[t]his is not a case where there was no medical opinion from an examining or treating doctor." Doc. 13, at 5. The Court agrees. The Eighth Circuit Court of Appeals in *Nevland*, reversed a denial of benefits and remanded the case for the following reasons:

> In spite of the numerous treatment notes discussed above, not one of [claimant]'s doctors] was asked to comment on his ability to function in the workplace . . . . In the case at bar, there is no *medical* evidence about how [claimant's] impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [claimant]'s RFC . . . . In our opinion, the ALJ should have sought such an opinion from [claimant's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [claimant]'s mental and physical residual functional capacity.

204 F.3d at 858 (emphasis in original). The absence of statements of treating and examining sources, however, does not automatically mandate remand. *See Mann v. Colvin*, 100 F. Supp. 3d 710, 722 (N.D. Iowa 2015) ("Even without an opinion from a treating or examining source, the ALJ's decision may be affirmed if there is other medical

evidence demonstrating the claimant's ability to function in the workplace."); *see also Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995) (finding claimant's RFC assessment was proper where the ALJ did not "rely solely on the reviewing physicians in this case."). Here, the ALJ did not just rely on the statements of reviewing physicians. Here, a psychological evaluation was ordered for claimant to further develop the record on her mental impairments. Claimant failed to appear twice for this evaluation. AR 21. Ultimately, an evaluation was performed. *See* AR 899-902 (evaluation performed by Barbara Lips, Ph.D., on September 24, 2013). The evaluation diagnosed claimant with "generalized anxiety disorder; depressive disorder, NOS [not otherwise specified]; personal trait features; GAF of 55." AR 902. Overall, the psychological evaluation found claimant was "coherent, logical, adequately goal-directed . . . no indication of any formal thought disorder . . . [s]he appeared to be functioning in the average range of general intellectual ability." AR 901. Regarding work-related activities, Dr. Lips found claimant was "able to remember and understand simple instructions, procedures, and locations." AR 902. Also, claimant had fair judgment. *Id.* Overall, the ALJ gave Dr. Lips' opinion little weight as it was "based largely on the claimant's self-serving allegations" to Dr. Lips which were inconsistent with the other medical evidence. AR 25. Yet, here, the record was fully developed on the issue of claimant's mental impairments by both Dr. Lips' consultative examination from September 2013 and the review of state agency's reviewing psychologist, Jennifer Wigton, Ph.D., in October 2013 (AR 142). Indeed, the ALJ's opinion explicitly cited both opinions, as well as that of state agency's reviewing mental health consultant, Scott Shafer, Ph.D., (AR 668, preceding the alleged onset date) for a thorough analysis. Regarding claimant's physical impairments and her ability to function in the workplace, substantial evidence in the record supporting the ALJ's findings is extensively discussed above. Thus, here, unlike

in the *Nevland* case, the ALJ had medical evidence of claimant's mental and physical impairments for the RFC assessment.

Claimant also argues that "[i]n light of the complexity of this case and the lapse of time from the non-examining state agency medical consultants['] review and the ALJ's decision, the Court should reverse and remand the ALJ's decision for further development of the record." Doc. 12, at 4. Essentially, claimant argues that it was improper for the ALJ to rely on the state agency consultants' reviews as these were so lapsed that they were outdated. Claimant points to the approximately 22 month lapse in time (between October 2013—date of most recent state consultant's review, and December 2015—date of ALJ's written decision). Claimant reasons that because claimant's extreme obesity may exacerbate her other medical conditions, it was improper for the ALJ to rely on such dated medical opinions. The Court disagrees. Mere lapse of time, here 22 months, did not invalidate the state agency consultants' medical opinions on the record. *See Kohn v. Colvin*, No. C13-4003-MWB, 2013 WL 5375415, at *13 n.5 (N.D. Iowa Sept. 26, 2013), *report and recommendation adopted,* No. C 13-4003-MWB, 2013 WL 6858433 (N.D. Iowa Dec. 30, 2013) (quoting *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011)) ("'[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.'"). In this case, the ALJ explicitly addressed this issue in her opinion. The ALJ wrote that she gave significant weight to the state agency's non-examining physicians and to the state agency's reviewing psychologists/mental health consultants, noting that "to the extent that the above residual functional capacity varied from the opinions of the State agency's consultants, this was attributable to new evidence now in the record (including testimony)

that was not available to those consultants and/or to further consideration . . . ." AR 25. Thus, the ALJ reviewed the state agency's consultants and the other evidence on the record at the time of her hearing, and determined that the opinions of the state agency consultants deserved significant weight and were consistent with the other evidence in the record. There is ample evidence in her decision that the ALJ considered medical and other evidence dated after October 2013. *See e.g.*, AR 21-22 (Exhibit C29F—medical records from July 2014 to September 2014 from the McFarland Clinic; Exhibit C28F—psychological evaluation records and progress notes from Abbe Center for Community Mental Health from November 2013 to December 2013; and Exhibit C30F—medical records from Center Associates dated July 2014 to October 2014). Overall, the Court finds that the ALJ met her duty to fully develop the record.

### B. The ALJ properly assessed the Polaski factors to determine claimant's credibility

Claimant alleges that the ALJ erred in discrediting the claimant's subjective complaints of pain. Doc. 12, at 5. Specifically, claimant argues that the ALJ failed to identify the inconsistencies in the record that discredited claimant's complaints.

The Court finds the ALJ correctly considered the relevant factors in determining claimant's credibility. An ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) claimant's daily activities; (2) duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). An "ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th

15

Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001).

The Court also notes that "[a]lthough the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2008). An ALJ may not, however, solely rely on his personal observations to reject such claims. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing *Polaski*) ("Subjective complaints can be discounted [by the ALJ], however, where inconsistencies appear in the record as a whole.").

The ALJ wrote that the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 23. The ALJ discussed specific instances where claimant's statements were inconsistent, and noted claimant's noncompliance with prescribed medication and treatment plans, and the minimal mental health treatment sought by claimant (beginning October 2013). AR 23-

24. The ALJ also noted that her personal impressions from the live hearing of the claimant were inconsistent with claimant's subjective complaints. *Id.* (regarding claimant's alleged deficient memory).

Overall, substantial evidence on the record supports the ALJ's decision to find claimant less than fully credible. As the ALJ noted, claimant has repeatedly failed to follow prescribed medication regimes and medical advice. *See, e.g.*, AR 899 (Dr. Lips noted claimant's noncompliance with taking Hydroxyzine, Amitriptyline, Cyclobenzaprine, and Gabapentin. Claimant explained by saying that she needed to find transportation to the free clinic.); AR 925 (claimant was not using her continuous positive airway pressure machine despite the University of Iowa Hospitals and Clinics finding that the machine improved her sleep); AR 925 (claimant had resumed taking prescription medication again after she stopped on her own in the summer of 2014); and AR 64 (at the hearing, claimant admitted to missing evening doses of Keppra medication). Claimant did not follow medical advice to reduce calories and increase exercise. AR 20 (citing AR 783, clinic notes from March and June of 2012: "[e]ncouraged decreased caloric intake and increased exercise to promote weight loss as I do believe the weight is increasing the stress on her back"). *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (finding ALJ properly considered claimant's noncompliance with her doctor's instructions in assessing claimant's credibility); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *Fickler v. Colvin*, No. 8:11CV440, 2013 WL 1090405, at *27 (D. Neb. Mar. 15, 2013) (failure to follow medical professional's advice to lose weight "weighs against a claimant's credibility."). The ALJ also pointed out other inconsistences. The ALJ pointed out inconsistencies between claimant's disability report, her earning history, and her testimony at the hearing. AR 23. *See* AR 417

(claimant described her job history as press operator from 2000 to 2001 and telemarketer off-and-on from 1997 to 2008), which was inconsistent with her earnings report (AR 342-349), and her hearing testimony regarding work history (AR 23, 147). At the hearing, claimant testified that she quit her job as a taxi dispatcher in June 2013 (AR 49); made calls for the muscular dystrophy association (MDA) from May to November of 2011 (AR 51), prior to MDA, she took incoming calls for Medicare and Medicaid where she was let go (AR 50-51). Preceding her alleged disability onset date of October 17, 2011, claimant worked in data input for the postal service (2005-2006), Hy-Vee, Verizon, Walmart, Victor Plastics, Jerry's Video and Arcade Center, etc. AR 52-55. Also, claimant's work in 2013 as a caller, and in 2014 as a taxi dispatcher, detracts from her credibility of claiming total disability, although such work was not found to be substantial gainful activity. *Samons v. Astrue*, 497 F.3d 813, 80 (8th Cir. 2007) (in a credibility determination, ALJ properly considered claimant's work as a housekeeper for seven hours per week as it was inconsistent with claimant's testimony on the record). Also, the ALJ noted that claimant sought minimal mental health treatment in contrast to her complaints. AR 21 ("The objective medical evidence of record revealed no mental health treatment prior to late in 2013, despite the claimant's reports of anxiety and nervousness in connection with her disability application."). *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding ALJ's credibility finding where the ALJ noted the absence of hospitalizations and limited treatment of claimant's symptoms). From these mentioned inconsistencies, and others discussed in the ALJ's decision, and upon the Court's thorough review of the record, substantial evidence on the record supports the ALJ's credibility finding.

### C. The ALJ did properly consider claimant's obesity

Claimant alleges that the ALJ failed to "adequately address [claimant's] extreme obesity" and failed to properly apply Social Security Ruling 02-1p. Doc. 12, at 8. Further, claimant argues that her obesity is especially severe. Doc. 12, at 9 ("[Claimant] was extremely obese . . . [her] BMI generally has been in the 54-55 range. . . . Her BMI easily passes the definition of extreme obesity. . . . The ALJ should have considered the claimant's musculoskeletal problems . . ."). Essentially, claimant alleges that the ALJ failed to consider claimant's extreme obesity in the aggregate of her other impairments.

An ALJ must consider claimant's obesity when evaluating his or her disability. SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002). For adult men and women, obesity is defined as having a Body Mass Index (BMI) of 30 or over. *Id.* Generally, a physician's opinion will establish obesity. *Id.* A claimant is considered obese "as long as his or her weight or BMI shows essentially a consistent pattern of obesity." *Id.* For an adult claimant, the ALJ is instructed to consider obesity at the following stages of the sequential evaluation process: whether the claimant has medically determinable impairments; if any of the impairments are severe; if any of claimant's severe impairments are disabling impairments listed in the regulations; and if claimant's impairments allow him or her to do past relevant work or work that exists in the national economy in significant numbers. *Id.*

Here, the ALJ repeatedly considered the claimant's obesity through her analysis. The ALJ found that claimant had a severe impairment of obesity. AR 14. Considering Social Security Ruling 02-1p for obesity, the ALJ wrote the following:

> The claimant's obesity was evaluated under Social Security Ruling 02-1p, and her obesity was not of such a level that it resulted in an inability to ambulate [walk/move]. Her gait was normal for speed, stability, and

safety; she did not require any assistive devices. The claimant's medically determinable and diagnosed obesity does not impose substantial limitations with mobility and stamina or significantly exacerbate the claimant's other medical conditions. There is no credible evidence of severe, chronic pain or significant range of motion limitation of a weight-bearing joint or the lumbosacral spine, hypertension with persistently elevated diastolic blood pressure of 100 or more, chronic venous insufficiency, congestive heart failure, or severe respiratory impairment (Social Security Ruling 02-1p). There is no report of shortness of breath, cardiovascular, or musculoskeletal body system complications caused by obesity. The claimant was encouraged to exercise and diet, which she has not done. The Administrative Law Judge finds the claimant's obesity to be severe, but the signs, symptoms, and laboratory findings do not establish that her obesity has increased in severity coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listed impairment. Nevertheless, the Administrative Law Judge fully considered the claimant's obesity when reaching the findings herein, and the limitations resulting from the claimant's obesity are reflected in the below residual functional capacity assessment.

AR 15. Substantial evidence in the record as a whole supports the ALJ's findings. *See* AR 716 (motor skills described as normal tone and strength, dated January 2012); AR 697 (normal range of motion dated October 2012); AR 814 (June 2012 clinic notes state "[e]qual and strong strength of both upper and lower extremities bilaterally."); AR 853 (clinic notes indicate that claimant was prescribed orthotics to help stabilize her ankle and to "help give her some pain relief while she is walking or standing."; AR 139-40 (state consultant noted that claimant had normal gait and motor according to August 2013 medical records). *See also Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009) ("Because the ALJ specifically took [claimant's] obesity into account in his evaluation, we will not reverse that decision."); *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004)("The ALJ specifically referred to [claimant's] obesity in evaluating

his claim, and having reviewed the record as a whole we think that he adequately took that condition into account when denying [claimant] benefits.").

Also, claimant argues "[t]he ALJ's focus seemed to be on the doctors recommending [claimant] lose weight." Doc. 12, at 10. Claimant insinuates the ALJ was prejudice against the claimant for her failure to follow doctors' recommendations and lose weight. *Id.* Such accusation seems inappropriate as there is nothing in the ALJ's decision, nor in the transcript, that remotely supports such an allegation. Rather, the decision clearly reflects a well-written and well-considered ALJ decision that extensively examined SSR 02-1p, including how her obesity affected her musculoskeletal problems.

Lastly, claimant also brings attention to typos present in the ALJ's decision. *See* AR 21 "claimant was not a candidate for obesity." While regrettable, this typo constitutes a mere deficiency in the opinion writing and did not undermine the substantial evidence on the record supporting the ALJ's decision. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that an 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.") (internal quotation marks and citation omitted). Furthermore, claimant bears the burden to prove that an ALJ's error was not harmless. *See Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently . . . and any error by the ALJ was therefore harmless."); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."). Claimant does not indicate how in the absence of the ALJ's typo the ALJ would have decided differently. Doc. 12, at 10. Thus, the typo is irrelevant to the outcome.

## VI. CONCLUSION

After a thorough review of the entire record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's decision to find claimant was not disabled. Accordingly, the Court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 10th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa